## MUNROE *v.* WILSON *& a.*

An action for the recovery of real estate, begun twenty-nine years after the right first accrued to the plaintiff and ten years after the removal of the disability of minority, cannot be maintained against the grantees of one who was in open, visible, exclusive, notorious, and uninterrupted possession of the demanded premises for more than forty-five years.

WRIT OF ENTRY. Facts found by a referee. Judgment was ordered for the defendants, subject to the plaintiff's exception.

*Silas Hardy* and *Eleazer L. Waterman* (of Vermont), for the plaintiff.

*Batchelder & Faulkner* and *Amos J. Blake*, for the defendants.

CHASE, J. Lewis Munroe at the time of his death, July 26, 1841, was the owner of the premises in dispute, subject to a mortgage given by him to Abel Angier, April 6, 1840, and was in possession. He died intestate, and left a widow, Ann, and three minor children, Julia, Adna L., and Charles R. The only interest the widow had in the premises was a right of dower. The homestead right was not created until ten years later (Laws 1851, *c.* 1089), and the right to waive dower and take a portion of the estate in fee in such a case, not until 1872. Laws 1872, *c.* 41; Laws, *ed.* 1830, *p.* 351. It does not appear that the widow's dower was ever assigned to her. One of the children, Julia, died under age and unmarried. Upon her death her interest in the real estate, derived by descent from her father, descended to her brothers in equal shares, to the exclusion of her mother. Laws, *ed.* 1830, *p.* 351; R. S., *c.* 166, *s.* 2; P. S., *c.* 196, *s.* 2; *Crowell* v. *Clough,* 23 N. H. 207. It thus appears that Charles R., upon the death of his father, became seized of one undivided third part of the premises, subject to the Angier mortgage and his mother's right of dower (Laws, *ed.* 1830, *p.* 351); and upon the death of his sister, he became seized of an additional undivided sixth part, making his whole interest at his decease one undivided half. The plaintiff is his only child, and claims his half by descent.

Angier conveyed the premises to Melvin Wilson, by a quitclaim deed dated November 3, 1847, and recorded March 31, 1848. Wilson had previously (June 19, 1845) married Ann, the widow of Lewis Munroe, and was in possession of the premises when they were conveyed to him, and continued in possession

until his death, April 7, 1893, a period of more than forty-five years. After Munroe's death, his widow, with their children, occupied the premises until her marriage with Wilson, and after that they resided there with Wilson, she until her death, July 17, 1875, and the children until they became of age. The plaintiff was born upon the premises, August 23, 1862, and lived there until his marriage in 1888, with the exception of two years. After his mother's death in 1864, he was a member of Wilson's family. The defendants claim under Wilson.

It is understood from the referee's report, that after Wilson received the deed from Angier his possession was held under it and was open, visible, exclusive, notorious, and adverse to all conflicting rights. The mortgage of the premises by him and his wife, March 30, 1848,— only about three months after the date of the deed,— and the conveyances by him of portions of the premises in 1850, 1868, 1878, 1885, 1889, and 1891, do not admit of any other conclusion. They were unequivocal acts, hostile to the title of the heirs. The facts differ materially from those in *Livingston* v. *Pendergast*, 34 N. H. 544, and leave no ground for a presumption, as in that case, that his possession was held by virtue of his wife's right of dower and the children's inherited interests. Such being the character of his possession, it disseized the heirs and entitled them to bring an action to recover possession. Their mother's right of dower did not postpone nor interfere with their right of action. It was a mere right to have dower set off to her. If the heirs, within one month after a demand, did not set out and assign a just third of the premises to her as dower, she could recover the same, together with damages for their neglect, in an action begun by a writ of dower. Laws, *ed.* 1830, *p.* 538. Before an actual set-off, she was not seized of any estate in the premises and was not entitled to possession as against the heirs. Co. Lit. 34, 37 b; *Johnson* v. *Morse*, 2 N. H. 48, 49; *Robie* v. *Flanders*, 33 N. H. 524; *Tidd* v. *Quinn*, 52 N. H. 341; *Babb* v. *Babb*, 61 N. H. 142.

The disseizin of the heirs by Wilson and its continuance for so long a period, without the existence of any intervening estate and without any assertion of their claim, barred their rights in the premises. *Forest* v. *Jackson*, 56 N. H. 357; *Clark* v. *Clough*, 65 N. H. 43, 78. There has been no material change in the statute of limitations applicable to this state of facts since the act of June 19, 1805. Laws, *ed.* 1830, *p.* 74; R. S., *c.* 181, *ss.* 1, 2; G. S., *c.* 202, *ss.* 1, 2; G. L., *c.* 221, *ss.* 1, 2; P. S., *c.* 217, *ss.* 1, 2. As expressed in the Revised Statutes, it is as follows: "No action for the recovery of any real estate shall be maintained, unless such action is brought within twenty years after the right first accrued to the plaintiff or to any person under whom he claims, to commence an action for the recovery thereof. If the person

first entitled to maintain an action . . . was within the age of twenty-one years . . . at the time such right accrued, such action may be commenced within five years after such disability is removed."

Charles R. Munroe, having been born July 29, 1838, was about nine years old, November 3, 1847, when Wilson's possession under color of title began, and he lived until February 16, 1865, or more than seventeen years after that. During the last five and a half years of his life he was of age and capable of defending his right in an action. The plaintiff then succeeded to his right, being about two and a half years old. The statute, having begun to run in Charles R.'s lifetime, was not interrupted by the succession of a minor to his right. *Wallace* v. *Fletcher*, 30 N. H. 434. If the time that elapsed before Charles R.'s death were ignored, and the statute began to run then, more than twenty-nine years intervened between that event and the date of the plaintiff's writ, March 16, 1894, during the last ten and a half years of which the plaintiff was under no disability. It appears, also, that the plaintiff had actual notice that Wilson's possession was under a claim adverse to his title, for he purchased a portion of the premises of Wilson or his grantee.

*Exception overruled.*

CLARK, J., did not sit: the others concurred.