Plaintiff, Mrs. Martha Jane Coleman Stafford, wife of A.L. Stafford, prosecutes this appeal from a judgment dismissing her suit in which she seeks to have a sale of a ten acre tract of land situated in Tangipahoa Parish, which she claims is her separate property, cancelled and declared of no effect. The sale which she attacks was one made by the sheriff of the Parish under execution of a judgment obtained in Washington Parish against her husband and his endorsers on a note, W.W. Creel *Page 84 
and L.W. Sumrall. At the public sale made by the sheriff Creel and Sumrall purchased the property and it is against them that she has directed her demand to have the same annulled and the recordation thereof cancelled and erased from the Conveyance Records of Tangipahoa. Parish.
In her petition she alleges that she purchased the property from the late Judge Hypolite Mixon on May 18, 1940, by deed which is duly recorded in the Conveyance Records of the Parish, with her own separate and paraphernal funds for her own separate and paraphernal use; that it was unlawfully subjected to seizure without her having been party thereto and that the defendants are not innocent and bona fide purchasers, knowing at the time it was sold, that it constituted her separate and paraphernal funds and effects, under her own separate and paraphernal administration and use.
The defendants filed an exception of no right or cause of action which was overruled and then answered putting at issue plaintiff's claim that the property was her separate and paraphernal property. After setting out that they were endorsers on a note given by A.L. Stafford to the Washington Bank Trust Company, on which the Bank obtained a judgment against them all, in solido, they aver that they were required to pay the same and they then became subrogated thereto; that they then caused execution to issue against the property which they allege was community property belonging to the community existing between A.L. Stafford and the plaintiff notwithstanding the title being in her name; that she was served with a notice of the seizure and having permitted the sale to take place without protest or taking any steps to protect any alleged right she may have in the property she is now estopped from making any attack on the sale at which they became purchasers.
[1] We are of the opinion that the exception of no cause of action was properly overruled. In their brief, counsel for defendants state that it is based on a lack of allegation in plaintiff's petition that the property which she claims to have purchased with her own paraphernal funds, was under her separate administration. It is urged that it is essential to allege and prove the fact of separate administration as well as to allege and prove the purchase with separate and paraphernal funds in order to keep the property out of the community. This may be a correct statement of the law on the subject and conceding that it is we nevertheless find that plaintiff's petition complies with those requirements as far as making the necessary allegations are concerned. In Article 10 it is alleged that the defendants "well knew that the property herein involved constituted her separate and paraphernal funds and effects and under her own separate and paraphernal administration and use." This allegation of itself may not be sufficient but when read in connection with other allegations of the petition it may be said to meet and overcome the objection raised under the exception.
The plea of estoppel raised in the answer of the defendants presents a stronger contention in their favor as it is shown that not only was the plaintiff personally served with a notice of seizure but also after service that she called at the sheriff's office and although there informed of what would take place and advised to consult an attorney if she thought there was any illegality about the proceedings, she did absolutely nothing. We think therefore that the plea of estoppel might well be sustained but in view of the strong preponderance of the testimony in favor of the defendants on the merits, the decision of the case and the resulting title to the property need not rest on that ground.
[2] Plaintiff was first married to Charles Crain who died in 1933. Soon thereafter she married a man named Griffin Corkern with whom she lived some two years and from whom she was divorced. She married Stafford the latter part of 1938, and this property was bought in her name from Judge Mixon on May 18, 1940. There is no mention made in the deed that she was purchasing the property with her separate funds, and as the deed shows that she was married to Stafford at the time of the purchase, the property fell into the community existing between them. The property was seized and sold under the judgment of the Washington Bank Trust Company on November 19, 1941, and this suit to set aside the sale was not filed until June 4, 1943.
Plaintiff testified that she derived the funds with which she acquired the property as her separate estate from the sale of a horse, three cows and some other personal property which her first husband, *Page 85 
Crain, owned at the time of his death. While all this property, according to her testimony, was sold for some $150 to $175, she did not sell it all at once. Some of it was sold shortly after Crain died, six or seven years before she claims to have paid $259 in cash for the property involved in this suit. Her former husband Corkern, from whom she was divorced, testified that he did not know of her having any money during the two years that he lived with her.
She was getting support from the local Welfare Relief Agency for herself and minor children, issue of her marriage with Crain, after she and Corkern separated and until she married Stafford. It is hardly reasonable to presume that she had this amount of money in cash during all this time and while she was on relief.
Another circumstance which militates against the plaintiff's claim is the fact that just before Stafford married her he and a man named McGee had a contract with Judge Mixon to purchase this same land. They each had paid $50 on the contract and built a house on the property, in which Stafford lived for a short time, and then apparently abandoned his contract. After he married plaintiff, they had lived together some two years when she claims to have put up the money to carry out this old contract with Judge Mixon. It is significant that that was after judgment had been obtained against Stafford. It is also significant that after McGee had died and his widow failed to carry out his part of the contract that it was Stafford, and not the plaintiff, who assumed ownership and ordered her to vacate the property.
[3] Counsel for plaintiff insists that even though it be held that the property is community property, it cannot be seized and sold to satisfy the debt of the husband which, in this case, was one contracted before the marriage. He cites Markham v. Allen, 22 La. Ann. 513; Succession of Bollinger, 30 La. Ann. 193 and Civil Code, Art. 2403.
The Bollinger case is not in point as the issue there involved arose out of a contest between heirs in a succession where there were two different communities. The Markham case is more in point and so is the cited article of the Civil Code as it is therein provided that whilst the debts contracted during the marriage enter into the community and must be paid out of the common fund, it is also further distinctly provided that "the debts of both husband, and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects." However, in construing this provision, the Supreme Court, in the case of Davis v. Compton, 13 La. Ann. 396, stated that this article of the Code (2403) "must be interpreted in connection with Article (2404) of the same Code, which pronounces the husband to be the head and master of the partnership or community of gains, and permits him to administer its effects, dispose of the revenues which they produce, and alienate them by an encumbered title, without the consent and permission of his wife. * * * As the husband has the right to alienate the effects of the community without the consent of his wife, creditors of the husband before marriage ought also to have the right to seize the effects of the community to satisfy their claims." This case is cited with approval in the case of Hawley v. Crescent City Bank, 26 La. Ann. 230 and apparently it states the law by which the present case has to be decided.
For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.