**GODCHAUX v. UNITED STATES**
(three cases).
Civ. Nos. 2680–2682.

United States District Court
E. D. Louisiana, New Orleans Division.
Jan. 10, 1952.

Charles D. Marshall, New Orleans, La., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Henry L. Spencer, Sp. Assts. to the Atty. Gen., John N. McKay, U. S. Atty., Lansing L. Mitchell, Asst. U. S. Atty., New Orleans, La., for defendant.

WRIGHT, District Judge.

These cases seeking refund of taxes paid under deficiency assessments for the years 1943, 1944 and 1945 have been consolidated for the purpose of trial because the primary issue of law and fact in each is common to all. In addition, as to case No. 2680, there is the additional question as to whether the time for making the deficiency assessment for 1943 had run when it was made. The primary question presented by all three cases is whether or not taxpayer, a second wife who filed a separate income tax return for each of the years involved, is entitled to a deduction under Section 23(u) of the Internal Revenue Code, 26 U.S.C.A. § 23(u), for one-half of the alimony paid by her husband to his former wife.

The taxpayer's husband, Emile Godchaux, was divorced from his first wife in 1939. In connection with the divorce an "Agreement of Settlement" was entered into for the declared purpose of fixing forever the respective property interests of the parties. One of the provisions of the agreement was that out of the annual income of Emile Godchaux as Secretary of Godchaux Sugars, Incorporated, and as partner of the law firm of Milling, Godchaux, Saal & Milling he, Godchaux, was to retain the first $10,000 and all over $20,000, with the second $10,000 going to his divorced wife as alimony.

In March, 1939, Godchaux married the plaintiff herein and set up the marriage domicile in Louisiana. As residents of Louisiana, a community property state, the taxpayer and her husband filed separate income tax returns during the years involved herein dividing the community income between them, including all of Godchaux's salary from Godchaux Sugars and his share of the profits of his law firm. They reported their respective shares of the community income as part of their respective gross incomes and each took a deduction of $5,000 under Section 23(u) of the Internal Revenue Code for the $10,000 paid each year to Godchaux' former wife. The Commissioner disallowed taxpayer's claim for the deductions, credited the full $10,000 deductions to the husband, and filed deficiency assessments against the wife. The taxpayer after paying the deficiency assessments under protest brought these actions for refund.

Before approaching the problem of the propriety of the alimony deductions by taxpayer, the question of the statute of limitations as it relates to the deficiency assessment for 1943 should be resolved. Under Section 275(a) and (f) [1] of the Internal Revenue Code no assessment could properly be made respecting plaintiff's 1943 return later than March 15, 1947, unless the running of the statute was suspended by the operation of Section 272(a). [2] Section 277,

---

1. "§ 275. Period of limitation upon assessment and collection Except as provided in section 276—

"(a) General rule. The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

"(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day." 26 U.S.C.A. § 275 (a) and (f).

2. "§ 272. Procedure in general

"(a) (1) Petition to Board of Tax Appeals. If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered

Internal Revenue Code.[3] On February 21, 1947, however, the Commissioner gave plaintiff the statutory notice of deficiency on her 1943 taxes as provided by Section 272(a) and by the express language of Section 272(a) the Commissioner was prohibited from making a deficiency assessment against plaintiff for at least ninety days following the issuance of the so-called ninety day letter.

On April 10, 1947 plaintiff filed a purported waiver of restrictions on assessment, such waiver being authorized by Section 272(d) of the Code.[4] The Commissioner did not levy his assessment against the plaintiff until July 18, 1947 and the plaintiff contends that the Commissioner's right to levy this assessment had prescribed on July 1, 1947 or 82 days after the waiver was filed on April 10th. In other words, plaintiff maintains that according to Section 277, on the filing of the waiver of April 10th the running of the statute of limitations was suspended with 22 days of the three year period remaining and that on this suspension being lifted by the filing of the waiver the Commissioner had the 22 days plus sixty days to levy his assessment. The defendant agrees with the contention and computation made by the taxpayer, except it maintains that no waiver was filed; that the purported waiver filed by the taxpayer on April 10th was a conditional waiver or an offer to waive which had to be accepted by the Commissioner before it became effective and the Commissioner did not accept the offer.

The purported waiver filed by the taxpayer on April 10th was on the usual form, that is, Treasury Department Form 870. However, in executing the form the taxpayer added, among other things, this proviso: "Provided that such assessment is made within the period now allowed by the Internal Revenue Code." The taxpayer contends that this proviso does not condition the waiver. The defendant, however, maintains that this proviso does condition the waiver, that it is an attempt to make the then applicable assessment period apply to the taxpayer's 1943 tax position regardless of any future change in the law.

The defendant's point is well taken. It is true that under Section 272(d) the taxpayer does have the right to waive the restrictions of Section 272(a) and that the waiver is self-operating and needs no acceptance by the Commissioner when it is unconditional. Moore v. Cleveland Railway Co., 6 Cir., 108 F.2d 656. However, when a taxpayer seeks to impose a condition on the waiver such waiver is not self-executory upon the mere filing thereof. Such conditional waiver may or may not be accepted by the Commissioner and the suspended statute of limitations does not again begin to run unless and until the condition

---

mail. Within ninety days after such notice is mailed (not counting Sunday or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. * * *" 26 U.S.C.A. § 272(a).

3. "§ 277. Suspension of running of statute

"The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a) ) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter." 26 U.S.C.A. § 277.

4. § 272(d) "Waiver of restrictions. The taxpayer shall at any time have the right, by a signed notice in writing filed with the Commissioner, to waive the restrictions provided in subsection (a) of this section on the assessment and collection of the whole or any part of the deficiency." 26 U.S.C.A. § 272(d).

is accepted or complied with. United States v. Goldstein, 1 Cir., 189 F.2d 752; Columbian Carbon Co. v. United States, 3 F.Supp. 536, 77 Ct.Cl. 768, certiorari denied, 291 U.S. 672, 54 S.Ct. 458, 78 L.Ed. 1061; Charles Clarage v. Fred L. Woodworth, 24 A.F.T.R. 1177 (Dist.Ct., Mich.); The Standard Commercial Tobacco Company v. Anderson, 16 A.F.T.R. 1022 (Dist.Ct., Ohio); Kansas City Southern Railway Co. v. Commissioner, 8 Cir., 75 F.2d 786; Associated Mutuals, Inc., v. Delaney, 1 Cir., 176 F.2d 179, 11 A.L.R.2d 896. The proviso added to Form 870 by the taxpayer obviously was intended to mean something. Obviously the taxpayer was not satisfied with the waiver form as prepared by the Treasury Department. She had a right to change the form, but if in changing the form she conditioned her waiver, then Section 272 (d) of the Internal Revenue Code does not apply and the statute of limitations does not start to run merely on the filing of the purported waiver. Moore v. Cleveland Railway Company, supra; United States v. Goldstein, supra. Here the taxpayer has sought in her waiver to choose the law by which she will be governed with reference to the period of assessment. She sought to choose the law as it then existed. Apparently the Commissioner did not wish to be bound by such a condition for he failed to accept this offer to waive and made the deficiency assessment on July 16, 1947 as he had a right to do under Section 272(a).

The taxpayer's claim of prescription as to the 1943 assessment being determined adversely to her contentions, the question common to all three years 1943, 1944 and 1945 must be resolved. With regard to this question, that is the deductibility by the taxpayer of one-half the alimony paid to her husband's former wife, it is conceded that reference must be made to applicable state law. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239. Taxpayer, however, relies most strongly on two Tax Court cases arising in community property states holding that if ante-nuptial debts or obligations of the husband are collectible out of the community under state law, then the husband and wife may each take a deduction for half of the alimony paid to a former wife. This reliance is based on the contention that under Louisiana law an ante-nuptial debt of the husband is collectible out of the community.

It is stipulated by the parties that the alimony paid to the former wife during the years in question was includible in the gross income of said wife as it met all the requirements of Section 22(k) of the Internal Revenue Code.[5] It is conceded also that under Section 23(u) of the Internal Revenue Code[6] the alimony paid would be a deduction available to taxpayer's husband, Emile Godchaux. Thus the only difference between the parties here is the government would make the deduction available only to the husband, whereas the plaintiff would divide the deduction between the husband and herself.

As suggested by plaintiff, this precise problem was passed on by the Tax Court on two occasions, one involving the com-

---

5. § 22(k) "Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *" 26 U.S.C.A. § 22(k).

6. § 23(u) "Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection." 26 U.S.C.A. § 23(u).

munity property law of Texas in the Sharon case, and the other the community property law of California in the Newcombe case. Robert A. Sharon, 10 T.C. 1177; Newcombe, 10 T.C.M. 152. The Newcombe case is a memorandum opinion based solely on the decision in Sharon. It is true, as taxpayer contends, the Sharon case holds that where an ante-nuptial debt or obligation of the husband is collectible out of the community the deduction under Section 23(u) may be divided between the husband and wife. However, Sharon further holds that this is so only where the wife has no recourse against the husband for her share of the community used in the payment of the ante-nuptial debt. Assuming that the Louisiana law is to the effect that an ante-nuptial debt of the husband is collectible out of the community, before this case can be brought within the doctrine of the Sharon case, it must be shown that under the Louisiana law the wife has no recourse against the husband for her share of the community used in discharging an ante-nuptial debt.

Taxpayer in her effort to evade the injunction of Article 2403 Louisiana Civil Code[7] and to show that an ante-nuptial debt of the husband is collectible out of the community cites several cases from the Supreme Court and the Courts of Appeal of Louisiana. All of these cases unfortunately are predicated at least to some extent, on a concept of the community in Louisiana which has now been repudiated by the Louisiana Supreme Court in Phillips v. Phillips, 160 La. 813, 107 So. 584. This false concept arose from a misconstruction of what is now Article 2404 of the Louisiana Civil Code in Guice v. Lawrence, 2 La. Ann. 226, wherein it was erroneously held that the husband in effect was the owner of the community property and the wife merely had an expectancy therein. Consequently, the ante-nuptial debts of the husband were payable out of the community whereas similar debts of the wife were

not. As a result of this misconstruction in the Guice case there grew up a line of cases which followed the Guice decision and which taxpayer cites in support of her contention that the husband's ante-nuptial debts are collectible out of the community. Davis v. Compton, 13 La.Ann. 396; Hawley v. Crescent City Bank, 26 La.Ann. 230.

As stated before, however, in Phillips v. Phillips, supra, the Supreme Court repudiated the doctrine of the Guice case and showed that the court in Guice was misled by a wrong translation of the Spanish word, *dominio,* used by the Commentator Febrero. Febrero in discussing the Spanish derivative of what is now Article 2404 of the Louisiana Civil Code and in describing the authority of the husband over the community estate used the word, *dominio,* as meaning dominion or control. Unfortunately, the Supreme Court of Louisiana in Guice erroneously translated the word, *dominio,* to mean ownership and held that under Article 2404 of the Civil Code the wife had a mere expectancy in the community, that ownership was in the husband. In Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 36 L.R.A.,N.S., 1040, Mr. Justice Holmes pointed out this error in translation by the Supreme Court of Louisiana in Guice, and in the Phillips case the Louisiana Supreme Court confessed its error, holding that a wife's interest in the community is not a mere expectancy as held in Guice but is the absolute ownership of half the community property even during the existence of the community, subject, of course, to the husband's power of administration. Such is now the settled law of Louisiana. Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116; Succession of Wiener, 203 La. 649, 14 So.2d 475.

It is true that since the opinion in Phillips v. Phillips, three cases from the Louisiana Courts of Appeal have held that the

---

7. "Art. 2403—Community and individual debts.—In the same manner, the debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects."

ante-nuptial debts of the husband are collectible out of the community. Hill v. Abell, 5 La.App. 497; First National Bank of Ville Platte v. Coreil, 145 So. 395; Stafford v. Sumrall, 21 So.2d 83. These cases ignore the Phillips case and apparently rely on the repudiated doctrine of Guice together with Article 2404 of the Louisiana Civil Code under which the husband may dispose of the movable effects of the community without the consent of the wife. It is doubtful, however, that the decisions in these cases are necessarily binding on this court. See 20 Tulane Law Review 136.

▆▆▆ Assuming that the law of Louisiana, notwithstanding Article 2403 of the Louisiana Civil Code, is to the effect that ante-nuptial debts of the husband are collectible out of the community, all of the cases cited by the taxpayer show that the wife is not without recourse when her share of the community property is so used. Guice v. Lawrence, supra; Davis v. Compton, supra; Hawley v. Crescent City Bank, supra; Markham v. Allen, 22 La.Ann. 513. Consequently this case cannot be brought within the ruling in the Sharon case. The Louisiana jurisprudence now shows beyond question that the wife actually owns her share of the community and her community property is no more finally liable for the debts of the husband than the property of some third party. It is explicit in the Louisiana decisions that if for any reason the wife's share of the community is used in payment of his ante-nuptial debts the husband is responsible to the wife to the full extent her property is so used. It would seem clear, therefore, that under the Louisiana law, any tax deduction arising out of the payment by the husband of an ante-nuptial debt is the husband's deduction in which the wife may not participate.

The taxpayer urges in the alternative that alimony is not really a debt, that it is a duty which places a charge upon the earnings of the husband, and consequently Article 2403 of the Louisiana Civil Code requiring ante-nuptial debts of the husband to be acquitted out of his own property has no application to the payment of alimony. Here the taxpayer is on much firmer ground.

In Festervand v. Laster, 15 La.App. 159, 130 So. 634 the Louisiana Court of Appeal for the Second Circuit held that alimony is not a debt, that it is a natural and legal duty having some but by no means all of the essential attributes of a debt. Further, the fact that this legal duty to pay alimony has been the subject of an agreement between the parties, as in the case at bar, does not convert the duty into a debt. Festervand v. Laster, supra; Dunbar v. Dunbar, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084.

The Supreme Court of the United States in considering debts dischargeable in bankruptcy has had occasion to outline the exact nature of alimony. In Audubon v. Shufeldt, 181 U.S. 575, 578, 21 S.Ct. 735, 736, 45 L.Ed. 1009, the court in distinguishing alimony from debt, said: "Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings; * * *." In Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390, the court again distinguishing between alimony and debt stated: "While it is true in this case the obligation has become fixed by an unalterable decree so far as the amount to be contributed by the husband for the support is concerned, looking beneath the judgment for the foundation upon which it rests, we find it was not decreed for any debt of the bankrupt, but was only a means designed by the law for carrying into effect, and making available to the wife and children, the right which the law gives them as against the husband and father."

▆▆▆ From these cases it is evident that under the law of Louisiana as well as under the jurisprudence of the Supreme Court of the United States alimony is not a debt and consequently the payment of alimony by the community is not barred by the injunction of Article 2403 of the Louisiana Civil Code. This fact of itself, however, does not entitle the second wife

to a tax deduction for one-half the alimony paid by the husband to his former wife. Before the second wife is entitled to a tax deduction based on the payment of alimony by the husband it must be shown not only that her community funds were used in payment of this alimony but also that she is without recourse against the husband for such use, for it is axiomatic that no deduction is allowable unless taxpayer herself incurred the expense for which the deduction is claimed. In other words, before the taxpayer in this case can be allowed the deduction in question it must be shown that she suffered the charge for which the deduction is made.

This brings us to a consideration of the case of Succession of Ratcliff, 209 La. 224, 24 So.2d 456, wherein it was held that where the revenue from the husband's separate property goes into the community, the community must bear the charges on that separate property. In reaching this conclusion in the Ratcliff case, the Supreme Court of Louisiana relied on the Succession of Boyer, 36 La.Ann. 506 wherein it was held that where the community has been credited with all of the revenues of the husband's separate property, the community is chargeable with the taxes, repairs and insurance on such property and on Courrege v. Colgin, 51 La.Ann. 1069, 25 So. 942, wherein it was held that where the husband cultivates a plantation, the separate property of the wife, the indebtedness incurred in such cultivation is a liability of the community since the community would have been the recipient of any profits therefrom. To the same effect is Sharp v. Zeller, 110 La. 61, 34 So. 129.

While it is true that the alimony payments in question here are not charges on the separate property of the husband, these alimony payments were paid out of and are in fact charges on his current earnings. Audubon v. Shufeldt, supra. Since under Article 2334 of the Louisiana Civil Code all of the earnings of the husband go into the community it is only just and equitable that the charges on these earnings be acquitted out of the community.

Succession of Ratcliff, supra; Succession of Boyer, supra; Courrege v. Colgin, supra. In the case at bar the taxpayer and her husband in filing their separate returns each reported one-half of the husband's earnings as part of their respective gross incomes. The division of the earnings the government concedes to be correct. It is the division of the charge on these earnings and the deduction claimed by taxpayer based on this division of the charge between taxpayer and her husband which the government attacks. This attack must fail for, as shown above, since it is proper for the taxpayer and her husband to divide the income from earnings, it is also proper for each to take the deduction arising from a charge on that income.

The government, in the alternative and in the event it is held that the taxpayer is entitled to the refund claimed, pleads equitable set-off, it appearing that when the Commissioner disallowed the deduction for one-half of the alimony and made the deficiency assessment against the wife he allowed her husband a deduction for the entire alimony payment and made a refund to him accordingly. Section 3801 of the Internal Revenue Code[8] provides the procedure available to the Commissioner when a determination under the income tax laws allows a deduction to one taxpayer which deduction was erroneously allowed by the Commissioner to a related taxpayer. The Comissioner has one year from this determination to correct the erroneous allowance even though the statute of limitations has or will have otherwise expired before that time. The determination made in this case by this court is inconsistent with the allowance of a deduction to the husband for the full alimony payments. Consequently the Commissioner has one year from the time this determination becomes final to reopen the husband's returns and make the necessary adjustments. Those adjustments obviously cannot be made in these proceedings.

Let judgments be prepared in accordance herewith.

8. Title 26 U.S.C.A. § 3801.